2014 VT 87

**In re C.L. and S.L., Juveniles**

[101 A.3d 1280]

No. 14-084

¶ 1. July 29, 2014. Mother appeals from a disposition order of the superior court, family division placing the minor children C.L. and S.L. in the care and custody of the Department for Children and Families (DCF). She contends the trial court "lacked critical information to make a responsible, rational custody decision" based on a provision in its order requiring DCF to submit a revised case plan with an updated plan of services within thirty days of the decision. We affirm.

¶ 2. The facts and procedural history may be summarized as follows. In late May 2013, DCF filed a CHINS petition alleging parental neglect of the minors C.L. and S.L., who were ten and three years old at the time. The petition followed a long history of DCF involvement with the family. In 2012, an older brother, J.L., was transferred to DCF custody due to medical neglect and placed in another home under a guardianship.

¶ 3. The court held a preliminary hearing in June 2013. Although DCF requested a temporary care order transferring custody of C.L. and S.L. to DCF, and the court expressed serious concern about the children's developmental delays, the court ultimately issued a conditional care order maintaining parental custody with "stringent conditions" requiring that the parents continue to engage in mental health services and ensure that the children attend school and daycare, arrange transportation necessary for the children to attend therapy, medical appointments, and other services, and follow through on all recommendations of service providers regarding the needs of the children.

¶ 4. At a hearing in July 2013, the parents stipulated to an adjudication of CHINS based on the children's excessive absences from school and daycare, their "destabilized" living situation, and the parents' failure to adequately utilize special education services for the children. DCF's disposition case plan, filed with the court on August 27, 2013, recommended that custody be transferred to DCF with concurrent goals of reunification or adoption. The parents objected to the stated goals at the initial disposition hearing in late August 2013, and the court scheduled an evidentiary hearing for early October. The hearing extended over several addi-

tional days in late October and early November 2013, and concluded on January 9, 2014. The court issued a written decision later that month.

¶ 5. In summary, the court found that both parents face a number of difficulties in providing adequate care for the children, for which they have received numerous services. Mother has significant cognitive impairments for which she receives assistance from Developmental Services, as well as mental health issues, including depression which has led to hospitalizations, for which she receives counseling through Northeast Kingdom Health Services. These challenges have led to serious problems of child safety and neglect, including extremely unhygienic conditions in the home, the children attending school in unwashed clothes and smelling of dirt and feces, poor nutrition, chronic school absences, missed medical, dental and therapy appointments, lack of appropriate toilet training, and inability to communicate with the children. A caseworker with NKHS who had worked with the family since 2008 noted that mother was attentive but not able to independently implement suggestions or instructions, and that her motivation to continue with services tended to evaporate over time.

¶ 6. Evidence was also adduced that both children had significant developmental delays. C.L., who was eleven at the time of the hearing, has a full scale IQ of sixty-one and receives extensive special services at school. Her testing and conduct indicated that expected improvements in cognitive and adaptive skills have not occurred, raising concerns about her ability to live independently in the future. Necessary supports for C.L. at home include reading to her, and helping her to identify and count coins, select appropriate clothes, and ensure adequate bathing and hygiene — none of which was happening at the time of the CHINS petition or hearing.

¶ 7. S.L. was four years old at the time of the hearing. He was not toilet trained, and continued to attend school in a diaper. The disposition case plan noted that he was still largely nonverbal, communicating primarily with grunts and gestures. The court noted that testing in the fall of 2013 had resulted in a diagnosis of childhood apraxia, a condition in which the brain does not transmit the necessary signals to facilitate speech. An expert in speech and language pathology testified that she started working with S.L. in November 2013, and performed tests that resulted in the apraxia diagnosis. She indicated that the preferred therapy to facilitate communication in such cases was through use of a speech-generating device that would allow S.L. to express himself, supplemented by intensive speech therapy. The speech pathologist emphasized the need for consistent attendance by the child's caregiver at every appointment to learn the use of the device and methods to interact with the child, and the importance of continual practice at home. She also stressed the need for close cooperation among the speech therapist, parents, and school.

¶ 8. S.L.'s current school teacher testified about S.L.'s continued inability to speak, lack of toilet training, cleanliness or appropriate clothing, and struggles to stay awake at school.

¶ 9. The court noted that the provisions of the conditional care order had focused primarily on getting the children to and from school and various service providers, and found that overall the parents were able to comply with this condition. However, the court further found that the parents had not been able "to provide the most fundamental level of care on any consistent basis" for the children; that S.L.'s developmental delays required intensive supervision and support over time which they had not provided; that C.L. had also failed to make progress in developing the skills necessary to eventually live independently; and that continued parental custody under the conditional care order would not provide the support

necessary to ensure the children's current and future welfare and safety.

¶ 10. Accordingly, the court ordered that the custody be transferred to DCF and adopted the concurrent case plan goals of reunification or adoption. Given the age of the case plan — dating from August 2013, five months earlier — and the time that it had taken to complete the hearing, the court ordered DCF to submit an updated plan of services within thirty days that might help the parents to make progress toward reunification. This appeal by mother followed.

¶ 11. We note preliminarily that our review of the court's findings and conclusions is limited. "Absent an abuse of discretion the findings and disposition order of the [family] court must stand." *In re L.T.*, 149 Vt. 473, 476, 545 A.2d 522, 523 (1988). Mother here challenges none of the court's factual findings outlined above. Rather, she contends that, in accepting the concurrent goals of reunification or adoption while simultaneously "reject[ing]" the plan of services and ordering an updated plan, the court somehow "lacked critical information to make a responsible, rational custody decision" and acted contrary to the statutory scheme.

¶ 12. The claims lack merit. First, the court did not purport to reject the plan of services in the case plan, but merely ordered that they be updated. As noted, the court had already concluded that, despite the supports and services provided over the past several years, the parents had "been unable to provide the most fundamental level of care on any consistent basis." However, S.L.'s specific diagnosis of apraxia and the special additional therapies associated with it had not been identified until the middle of the hearing, in November 2013, and the existing plans of services obviously had not addressed the subject. In addition, the court noted that neither parent had testified at the hearing, and observed that there might be additional services that

might help them make progress toward reunification, including the retention of an individual with the skills necessary to serve as an in-home "mentor."

¶ 13. Contrary to mother's suggestion, nothing in the court's order for an updated plan of services undermines its conclusion that continued parental custody under the conditional custody order was no longer viable in view of the evidence of the children's continued neglect and lack of progress in addressing their special developmental needs. Indeed, while the court was careful to order an updated plan of services, all of the evidence concerning the children's age and lack of progress, and S.L.'s more recent diagnosis, suggested — as the court recognized — that an even greater level of parental supervision and involvement would be required in the future. Thus, we find no support for mother's claim that the court's decision lacked an informed or rational basis or that the court abused its discretion in transferring custody before completion of the revised plan.

¶ 14. Nor do we find any support for mother's corollary claim that the trial court "acted contrary" to the statutory intent. The permanency-planning statutes contemplate that the court shall make an order at disposition "in the best interest of the child," 33 V.S.A. § 5318(a), and in the event that it "orders the transfer of custody" to DCF the court "shall establish a permanency goal for the minor child and adopt a case plan prepared by the Department which is designed to achieve the permanency goal." *Id.* § 5318(b). If the court determines that DCF's plan "does not adequately support the permanency goal," it may reject the plan and order DCF to submit a revised plan. *Id.*

¶ 15. Thus, the court's initial decision to order a transfer of custody to DCF in the best interests of the children was not dependent on the disposition case plan. Furthermore, nothing in the statute precludes the court from endorsing the

plan's permanency goals while also ordering an updated plan of services. On the contrary, the statute specifically provides that the court may — as here — order DCF to submit a "revised" plan of services "designed to achieve the permanency goal." *Id.* We thus find no error, and no basis to disturb the judgment.

*Affirmed.*