*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-262

OCTOBER TERM, 2014

In re T.D. & B.D., Juveniles   } APPEALED FROM:

             }

             } Superior Court, Chittenden Unit,

             } Family Division

             }

             } DOCKET NO. 53/54-2-13 Cnjv

              Trial Judge: Alison Sheppard Arms

In the above-entitled cause, the Clerk will enter:

Father appeals from the trial court's denial of his request to modify a disposition and conditional custody order. He argues that the court's decision is not supported by the record. We affirm.

Mother and father are the parents of T.D., born in April 2001, and B.D., born in March 2003.[*] Mother and father divorced in 2007. The Department for Children and Families (DCF) opened a case on the family in 2010 based on concerns about hoarding, unsanitary living conditions, and the children's behavioral and educational issues. The family case remained open for two years, and there was progress over that time.

In February 2013, DCF opened another case due to hoarding and cleanliness issues, and it filed a petition alleging that the children were in need of care or supervision (CHINS). Mother had sole custody of the children at that time. She admitted that the children were CHINS because she lacked stable housing, having lost her apartment due to her inability to keep it in a sanitary condition. Mother agreed that the unsanitary conditions were unhealthy for the children, and that the loss of the apartment led to instability for the children, both of which placed the children at risk of harm. The children were placed in mother's custody on the condition that they reside with father. At a post-disposition review hearing in July 2013, mother had still not obtained housing and the children continued to live with father. In late September 2013, mother asked that the children be returned to her custody as she had obtained housing. The court granted her request in October 2013 with the added condition that "DCF should monitor the mother's home on a regular basis."

In March 2014, father learned that mother was about to be evicted from her apartment, and he requested a hearing. Following a non-evidentiary hearing, the court declined to alter custody or parent-child contact given that mother was purportedly working with service providers to establish alternate housing. Father then filed a motion to modify the disposition

---

[*] They are also the parents of H.D., born in April 1998. H.D. is not part of this appeal; he was subject to a different order. See In re H.D., No. 2014-040, slip op. (Vt. July 24, 2014) (unpub. mem.), available at https://www.vermontjudiciary.org/LC/unpublishedeo.aspx.

order, alleging that mother had been evicted. Following a June 2014 hearing, the court denied father's request.

The court found as follows. After the children were returned to mother's custody in late 2013, a DCF social worker made announced visits to mother's home. The social worker observed that, in general, the dishes were done. In February 2014, mother received an eviction notice based on allegations of excessive noise and unsanitary living conditions, including an allegation that the apartment was "strewn with garbage, food, pet mess, etc. that emits a stench throughout the building." The court found that these allegations were not confirmed by any testimony presented at the hearing. Mother denied that the home was unclean, and DCF had not received any complaints from the local housing authority. Mother's landlord did not appear at the eviction hearing, and mother was not evicted. Nevertheless, mother entered into an alternate agreement whereby she could maintain her housing voucher and the housing authority would be allowed to enter her next apartment for a nine month period to conduct inspections.

Mother moved to a motel and then into a housing shelter. Mother was still looking for housing at the time of the June 2014 hearing. She could not stay at the housing shelter beyond September 2014, and her housing voucher was valid until October 2014. While living in the shelter had been challenging for the children, the DCF social worker believed that the children should continue to live with mother and maintain consistent visitation with father. DCF had not received significant reports that would warrant the children's removal from mother's care. The court found that mother had implemented recommendations from her service providers. The social worker testified that, while there was more work to be done, mother was compliant with important aspects of the case plan. The social worker believed that mother would be successful if she could find housing, continue to work with service providers, and if both parents tried to work together. The social worker believed that the CHINS case should remain open until mother obtained an apartment and then beyond that point for another three months.

Father presented evidence to support his contention that the children should be placed in his custody. He testified that he lives in a large house with his fiancée, three stepchildren, and H.D. Father believed that the shelter was not a stable home as it was a temporary living arrangement. He speculated that it was unsafe because he had seen people smoking in the parking lot. Father testified as to how he would address B.D.'s mental health needs. The court noted that father had successfully engaged in the intensive-family-based-services program for thirteen weeks. There was structure in father's home. When the girls were living with father, they did not miss school and were not late for school. Father believed that the children should be in his care because mother's issues had persisted for four years despite being given "chance after chance" with DCF's involvement. He believed that the children were suffering mental and emotional abuse and characterized their life with mother as a roller coaster that did not serve the children's best interests. Both parents agreed that they had different parenting styles and did not get along well.

Based on these and numerous other findings, the court concluded that while there had been a change in circumstances due to mother's housing instability, continued placement with mother was in the children's best interests.

With respect to the first statutory best-interest factor, the court found that mother had been the children's primary caregiver until February 2013 when the children lived with father for nine months. B.D. was more attached to mother than father, although she had recently become less resistant to visiting father. B.D. needed extra attention, and mother had supported her

2

programming. Mother engaged in activities with both children and exposed them to positive experiences. The court noted that father was able to effectively manage B.D.'s behavioral issues while B.D. was living in his home. Father loved the children. Yet beyond father's ability to discipline B.D. and generally provide for her care, the court had no other information from which it could conclude that father played a significant role in B.D.'s life. Similarly, the court found no information from which it could draw any conclusion regarding the qualitative nature of father's relationship with T.D. The court added, however, that father had been able to ensure that the children attended school regularly.

As to the second factor, the court concluded that the children were well-adjusted to being in mother's care although challenges remained. If mother could obtain stable housing in the near future, the court found it likely that she would be able to resume her full parenting responsibilities within a reasonable amount of time. Mother struggled to ensure that the children went to school. But this fact alone, the court found, did not demonstrate that the children were not well-adjusted to their school, and there was no other evidence indicating that the children were incapable of adjusting to their school. Additionally, the court concluded that the children should not be removed from mother's care simply because they were living in a temporary shelter as the children's needs were otherwise being met and no safety concerns existed.

Regarding the third and most important statutory factor, the court concluded that mother was working productively with service providers to address the family's challenging situation. Despite setbacks, DCF continued to support the primary case plan goal of reunification with mother. Mother was working to meet the case plan goals. She had not lost her housing voucher and was attempting to secure housing. Mother was also attempting to reenter the workforce. The court concluded that mother might accomplish the case plan goals within a reasonable period of time. It noted that mother must remain attentive to hoarding and ensure that her living conditions were sanitary.

Finally, the court recounted that both parents had participated in B.D.'s programming, but father had struggled on at least one occasion in a follow-up meeting because B.D. did not want him at the meeting. The court found that father appropriately withdrew from the meeting, but the incident demonstrated that his participation in therapeutic family work was stressful. While the court did not fault father, it found that the event demonstrated a disparity in the role he played in B.D.'s life as opposed to the role that mother played. Father credibly testified that he was willing to continue B.D.'s recommended counseling and work with her pediatrician. In evaluating this factor, the court noted, however, that father had unilaterally decided not to pursue counseling for H.D., who was not subject to the motion before the court. The court found this behavior concerning. While father was sincerely working toward a better relationship with B.D., that work was ongoing.

The court stated that it was most concerned by father's failure to demonstrate that he could play a constructive and collaborative role in parenting with mother. Father had H.D. in his custody, and the court found that the strain on father's time had compromised H.D.'s parent-child contact with mother. The court credited mother's testimony that she had limited contact with H.D. and that father was undermining that contact by refusing to provide H.D. with transportation to visit her and requiring H.D. to take a bus to see her, and that father discouraged visitation with mother at the housing shelter. While father's motion did not concern H.D., the court found that father's attitude toward continuing to foster a relationship between mother and B.D. and T.D. would be similarly restrictive going forward. Based on its analysis, the court

3

concluded that the children should remain with mother and continue to have visits with father. Father appealed from the court's order.

Father challenges the court's assessment of the children's best interests on appeal. He argues that the evidence and findings support a conclusion that the first and third statutory best-interest criteria tip strongly in his favor. He asserts that the court's conclusion as to the fourth factor is confusing. Ultimately, father contends that the court's conclusion that the children should remain with mother and have visits with him is not supported by the evidence and findings. He points to mother's failure to keep and maintain suitable housing and asserts that she has not been able to meet case plan goals. He maintains that, by contrast, he has always had suitable housing and he successfully parented the children for the nine months that he had custody.

The court may modify a disposition order if there is a change of circumstances which requires such modification to serve the children's best interests. 33 V.S.A. § 5113(b). "Absent an abuse of discretion the findings and disposition order of the [family] court must stand." In re C.L., 2014 VT 87, ¶ 11 (mem.) (quotation omitted). It is for the trial court, not this Court, to determine the credibility of the witnesses and weigh the evidence. See In re A.F., 160 Vt. 175, 178 (1993) ("We leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence.").

We find no grounds to disturb the court's decision. While father contends that his evidence supported modification, the court concluded otherwise. It recognized father's positive attributes. Nonetheless, it was unable to conclude that father played a significant role in B.D.'s life or in T.D.'s life. Mother, by contrast, had been the children's primary caregiver for most of the children's lives and had spent a great deal of time with B.D. and engaged in positive activities with the children. While mother had not yet met the case plan goals, the court found that she was working productively with service providers to address the family's challenging situation and was working to meet the case plan goals. The court concluded that she might accomplish the case plan goals within a reasonable period of time. In reaching its decision, the court also expressed its concern that father appeared unable to play a constructive and collaborative role in parenting with mother. For these and the other reasons set forth above, the court denied the motion to modify. The court provided a reasonable basis for its decision, and while father disagrees with the court's conclusion, he has not shown an abuse of discretion.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4