*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-124

JULY TERM, 2015

| | |
|---|---|
| In re C.L. and S.L., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Caledonia Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 53/54-5-13 Cajv |

Trial Judge: M. Kathleen Manley

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to her children C.L. and S.L., born in September 2002, and June 2009, respectively. On appeal, mother argues that that the court gave undue weight to the virtues of the foster parents and erroneously found that C.L.'s concern about losing her parents had subsided. We affirm.

In May 2013, the Department for Children and Families (DCF) filed a petition alleging that C.L. and S.L. were children in need of care or supervision (CHINS) based on parental neglect. In re C.L., 2014 VT 87, ¶ 2. In a temporary order, the court maintained parental custody under a conditional care order. In July 2013, parents stipulated that their children were CHINS based on children's absences from school and daycare, parents' unstable residence, and parents' inability to meet the children's special needs. Id. ¶ 4. The initial disposition order transferred custody to DCF and had concurrent goals of adoption and reunification. This Court affirmed mother's appeal of that order. Id. ¶ 1. The disposition plan required parents to, among other things, work with the children's educators and medical providers, follow directions during family time coaching, maintain a safe, clean, and smoke-free home and vehicle, and follow parenting programs.

In September 2014, DCF filed petitions to terminate parents' rights based on lack of progress. Following a hearing, the court found the following. Parents have a long history of being unable to meet their children's needs, including chronic unsanitary conditions in the home, poor hygiene, ongoing truancy, and inadequate management of parents' own mental-health needs. Parents were unable to provide adequate and safe care for the children, who both have special needs and require ongoing repetitive exercises and consistent support. Parents' skills had not improved significantly since the prior disposition order and this stagnation amounted to a change of circumstances. The court concluded that termination was in the children's best interests insofar as there was no likelihood that parents would be able to resume parental duties within a reasonable period of time. Mother appeals.

Mother first argues that in terminating her parental rights, the court gave undue weight to the virtues of the foster parents. See In re E.B., 158 Vt. 8, 12 (1992) (observing that "parental rights cannot be terminated simply because a child might be better off in another home"). To

terminate parental rights, the court must consider four statutory factors: (1) the relationship of the child with his or her parents, siblings, foster parents, and others who may significantly affect the child's best interests; (2) the child's adjustment to his or her home, school, and community; (3) the likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time; and (4) whether the parent has played and continues to play a constructive role in the child's welfare. See 33 V.S.A. § 5114(a). The most important factor is the likelihood that the parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996).

Here, there is no indication in the record that the court chose to terminate parental rights based on a comparison of the foster parents to mother and father. The court properly evaluated all of the statutory best-interests criteria. In so doing, the court certainly made findings related to the foster parents when it considered the children's relationship to their foster parents, and the children's adjustment to their current home, school, and community. See 33 V.S.A. § 5114(a)(1), (2). In this regard, the court found that the children have a good relationship with their foster parents and have adjusted well to their foster home. The court noted the children's improvements since being placed in their foster home. Upon arriving at the foster home, both had difficulty sleeping, S.L. was not toilet trained and not able to speak, and C.L. was quiet, had poor hygiene, was unable to make eye contact, and was bullied at school. Within a few weeks, both were sleeping through the night, S.L. was toilet trained, they had a routine, and engaged in self-care. The children also adjusted to their school, C.L.'s reading had dramatically improved and she was focused on hygiene and making friends. In addition, S.L. was diagnosed with a condition that interferes with proper speech development, worked consistently with a speech therapist, and was able to communicate with speech and make friends.

The court also analyzed the other statutory factors. The court found the children love parents and that parents do play a constructive role in the children's lives. Most importantly, however, the court found that parents would not be able to resume parenting within a reasonable period of time. Parents did not consistently attend S.L.'s specialized speech therapy sessions. Of the sixty-four sessions, father attended sixteen and mother eight. Parents were unable to support S.L. in using his new verbal skills and he reverted to his former methods of communicating. Parents also did not consistently attend IEP meetings for the children. Of the seven meetings, mother attended only one. And parents were at only at one medical appointment. Parents required prompting and did not independently praise the children for their growth or provide for the children's emotional safety. Parents failed to attend the children's extracurricular activities. Family time did not progress to being unsupported because parents still required coaching and because the home was not clean and safe. In sum, the court found that children have extensive needs and require consistency, and parents will not be able to meet those needs in a reasonable period of time. This finding is well supported by the evidence and supports the court's decision that termination was in the children's best interests.

Mother also argues that the record does not support the court's finding that C.L.'s concern about losing her parents has subsided. In its order, the court found that the children enjoy seeing their parents and C.L. was "concerned about being adopted and not being able to see her parents," but that "[a]s time has passed this fear has lessened," and shortly before the hearing the social worker met with C.L and she "was excited by the prospect." Mother contends that the record may support a finding that C.L. was enthusiastic about adoption, but it does not support that C.L. was now indifferent to the prospect of not being able to see her parents.

In reviewing a termination decision, this Court will affirm the findings unless clearly erroneous. In re J.B., 167 Vt. 637, 639 (1998) (mem.).

2

Here, the finding was supported by the evidence. The children's DCF social worker testified that in the summer C.L. expressed that she was conflicted because although she loved her foster home, she questioned what adoption would mean for her connection with her parents. The social further explained that when he spoke with C.L. a week before the final hearing in February 2015, C.L. was "very different" and "[felt] comfortable with the relationship she has with her parents," and wanted to be adopted. This testimony adequately supports the court's finding that C.L.'s fear about what would happen to her connection with her parents after adoption—by inference the uncertainty about how much she would see her parents—had lessened.

In any event, as explained above, the court fully considered all of the statutory factors and concluded based on its supported findings that parents would not be able to resume parental duties in a reasonable period of time and termination was in the children's best interests. Therefore, there are no grounds to disturb the court's order terminating parents' rights.

<u>Affirmed</u>.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice